And I just remind you that anyone on the phone, that please put your phone on mute until it's your turn to talk. Thank you. Thank you. Thank you. Good morning.  My name is Marcia and I represent 20 counties. Your Honor, before I get into the substance of the argument, I would just like to point out something about the government's brief that we found very disturbing. In its statement of facts, it includes information that was taken from the pre-sentence report in addition to the trial transcripts. So that happens throughout, not just in talking about a sentencing issue. Now, the pre-sentence report in this case was taken entirely from the government. In fact, it states, and this is a quote, the following summary of offense conduct was provided by the government and appears in its entirety with minor edits. Additionally, the government in its brief points out that the district court adopted the statement of facts from the pre-sentence report as it cited the facts. But the court specifically said that it was only adopting the PSR to the extent that it contained facts, quote, relevant to the issue of sentencing. So we would ask that the court not use the government's statement of facts in its brief in its consideration of this case, except as it relates to sentencing issues. Because time is short, I think I will discuss the competency procedures first. Just to review, there was an original evaluation done by a Yale psychiatrist who found the defendant incompetent but amenable to restoration of competency from treatment. The district court endorsed the report's findings and concluded, it's very clear that Mr. Kelsey is not competent and capable of assisting in his defense. Kelsey was sent for treatment to the Bureau of Prisons Medical Facility and apparently received no treatment according to the report. But the Bureau of Prisons psychologist who examined him determined that he was competent. The court accepted that evaluation without any discussion of the concept between the two reports. Now, this is not a case where a defendant is found incompetent, undergoes treatment, and then is found to be restored to competency. It's just two psychiatric experts who looked at more or less the same information and came to diametrically opposed conclusions. Of course, the Yale psychiatrist had a maniacal... Ms. Tavenhouse, this is Judge Bianco. Let me just ask you on this issue. We've said in Nichols and other cases, a district court does not have to have a full-blown evidentiary hearing, right? There's no requirement that a court have an evidentiary hearing with witnesses. Here, you said there was no discussion, but not only did the judge have Dr. Markey's report of competence, the defense lawyer, she specifically asked the defense lawyer, are you objecting to that? Do you want me to have a hearing, an evidentiary hearing? The lawyer said, no, I've met with him. He looks engaged. So the lawyer indicated there were no issues of competence, which is obviously compelling since he met with him that day and the day before. And the court noted on the record that the defendant looked fine. So all the factors were suggesting that there was no competency issue at that point. Do you want to address that? Yes, Your Honor. Nichols is a very, very different situation where it was not a case where there were conflicting reports and the judge accepted one, then changed its mind, and then accepted another. Here, Nichols, Judge Corman, had four evidentiary hearings, and he heard testimony from several of the psychologists, and he gave detailed reasoning for why he accepted one report and not another. I wasn't citing Nichols for the facts of the case. I was citing it for the law that an evidentiary hearing is not required. But let me just ask you this. Was there anything during the trial? I know on the first day he spoke out and was told that he couldn't speak out of turn. But other than that, was there any indication during the trial that he had any competency issues? In fact, the government noted that during jury selection, he suggested two challenges to particular jurors. And during the discussion about retaining counsel, he had a back-and-forth with the judge about discovery and not having enough time. So was there anything during the trial to suggest that he didn't understand what was going on? With respect to the jury selection, I just point out that at that point, that was the point at which he wanted a new lawyer. And I think, I mean, did he shout out during the whole trial? No. And that was never the basis for the original Yale psychiatrist determination that he was incompetent. It had more to do with the way that his illness, which everyone, all the parties agreed he had. I mean, throughout the trial, no one disputes that he had a serious mental illness. But it didn't manifest itself necessarily in foaming at the mouth. It was in the way his delusions prevented him from working with his attorney and being able to talk to his attorney. And issues of that sort, it was not acting out. And, in fact, throughout, even the magistrate before trial said that he appeared to be perfectly nice. No one thought that he was trying to hijack the proceeding. I'm going to pass the question to Judge Leslie. Okay. I'm sorry. I apologize. I had it muted, and I forgot, and I tried to forget to turn it back on. Ms. Kavanaugh, are you using a speakerphone? I am. Is it hard for you to hear? It's a little hard to make you out, and I know you're calling in from a distance, although I guess that shouldn't matter. Let me ask you along the lines of what Judge Bianco asked you. At any time during the trial, did his lawyer contend that in any way his client was unable to assist him? No, but – Well, isn't that in some way relevant? Well, you know what? In some ways, the competency issue and the denial of a new attorney, of the right for his right to get a new attorney, they coalesce because – Well, I mean, there's only – this is an appellate review. It's abusive discretion standard, right? Pardon? What's the standard review with regard to the court's determination, absent an error of law? I believe it is an abusive discretion, yes. So we have a judge on the ground who's familiar with this, so I'll actually have a colloquy with him. We have a report that says he's competent, to which defense counsel says they have no objection, doesn't ask for a hearing. You have a defendant who's responsive and participates in his own defense, and no objection from the lawyer. How is it an error as a matter of law and abusive discretion for the judge to not have held a hearing? Because the judge had already adopted the first report. Right, the first report which said that he might get better. I know that it said with treatment, and he didn't have treatment. So it's the simple fact that he had no treatment. Did the first report preclude the fact that he might simply get better on his own? Yes. It precluded it. It's limited with treatment. If you would – well, while I'm on rebuttal, I'll try and find the site for you. Okay, fair enough. Thank you very much. Yes. I should make myself clear that if the judge had explained why he was now – She, why she. Oh, I can't believe I did that. That's okay. Why she was changing her opinion, then that would be one thing, but she didn't. And, in fact, it's another thing. She indicated that she still had the opinion that he wasn't really able to help himself and assist in defending himself. So it's not that the judge couldn't have come to a conclusion. It's that without questioning the two psychologists to understand the differences, there was no basis for accepting the second one and rejecting the first one, which she said was well-founded and very thorough and comported with her observations. Now, I'd also like to point out that the second court appearance, which the government characterizes as a hearing, was 15 minutes. So there really wasn't time for serious observations. So I don't think you could say that the court was relying on its own observations. The attorneys had met their client for the first time the day before and made it very clear that while they didn't see anything, that they weren't – I think Judge Kasten is trying to ask you a question now. Oh, yes. Isn't it the case that your client had had multiple counsel appointed previously on his behalf? I mean, that's also been somewhat persuading. He had gone through two – he had one attorney that was appointed just for arraignment. Then he went through two attorneys. His third attorney stuck with him until that attorney withdrew because he was appointed to be a state court judge. And then the last attorneys were. So it really wasn't that he – he did have, obviously, trouble getting along with his attorneys. I would say part of his, you know, mental problem. But it's not that he just cycled through one after the other. And all of the charges occurred before he was declared competent. So I don't know how much weight you can give that. Thank you for that answer. Let me move on, if I could. Sure. Help me understand why your challenge to the district court's preclusion of evidence that minor victims reasonably appear to be older than 18 is not controlled by United States v. Robinson. Looking at the record, it appeared that the defendant conceded that point. And I'm quoting, I've read Robinson. I understand it vitiates any cross that I might have. But he argued before trial, and it was rejected, that the definition of what was reasonable included stuff like the appearance. Again, I'm sorry. I don't have it on the tip of my tongue, but I'll give you the citation on rebuttal. And my last question is, why is the evidence of Kelsey's involvement in an adult prostitution business and the interactions that he had with adult women only minimally relevant when the evidence you're challenging involves Sarah Packard's friend Sarah Bulow and co-conspirators Ross and Yates? I think I should narrow that into the bad character evidence. Really what we're arguing was irrelevant was the multitude of evidence that he was mean to the adult and that he yelled at them and gave them anxiety attacks. None of that was argued about the minors. It wasn't an integral part, as they say, of his prostitution organization. If anything, it was just bad character evidence. There was no reason for it except to place him in such a bad light that the defense felt compelled to argue to the jury that you can think he's not a nice guy, but that shouldn't affect your verdict. The adult prostitution part was minimally relevant, but the bad character evidence was prejudice way over prohibitiveness. Thank you. We'll now hear from your adversary, and you'll have time for rebuttal. All right. Thank you. Thank you, Your Honors. May it please the Court, Assistant United States Attorney Sarah Linigala for the United States. Your Honors, with the exception of the timing of the restitution payments, Judge Hall did not commit any reversible error during this trial. Throughout the duration of the case, Judge Hall diligently tried to balance all of the competing concerns to conduct a fair and impartial trial. Addressing first Mr. Kelsey's point regarding use of the facts that were in the PSR, Judge Hall was entitled to consider those facts for sentencing, and the Court is entitled to consider those facts for the appeal, given that, obviously, at trial, the trial evidence was constrained by the rules of evidence, so there were facts that came out through witness interviews that were hearsay and couldn't have been included in the trial but were included in the PSR, and thus the Court should be able to consider them for purposes of decision here. With respect to the competency issue, the challenge is waived to whether there was a competency hearing, because Judge Hall did hold such a hearing, but even if it's not, Judge Hall appropriately credited Dr. Marquez's report. Dr. Marquez met with Mr. Kelsey on five occasions over four months, consulted with a psychiatrist who met with him on one other occasion, administered an objective competence assessment tool, listened to more than two hours of his phone calls, and considered the observations of prison staff who saw him on a day-to-day basis for almost four months. In the hearing, Judge Hall specifically said that she was, quote, because of all of these advantages that Dr. Marquez's report had over the first report, as well as Judge Hall's own observations of Mr. Kelsey after his return from Butner. On the point about no treatment, Your Honor, Dr. Marquez's report specifically says that for the personality disorder with which Mr. Kelsey was diagnosed and was suffering from even at the time of trial, that medication would not necessarily be required for such a disorder. So Mr. Kelsey, his treatment regimen, of which there really wasn't any, wasn't necessarily to his disadvantage and should not be a reason to discredit the Marquez report. Moving to the issue of Judge Hall denying Mr. Kelsey's 11th hour request for yet another attorney, on this point it's important to consider the entire record of the case in context. At every court appearance, Mr. Kelsey pressed his right to a speedy trial, and Judge Hall does move the case forward expeditiously but carefully. He had numerous opportunities to raise this issue of retained counsel, including at the May 1st pretrial conference or the May 14th jury selection, but instead sprung it on the court 12 minutes before evidence began. And he stated on the record only that he had an attorney who was willing to submit pretrial motions on his behalf, not that he had one who was ready to proceed to trial. So if Judge Hall had granted Mr. Kelsey's request, a long trial delay would have been the likely result, as the counsel reviewed discovery and prepared any motions, assuming Judge Hall even reopened the motions deadline. So balancing the late timing of the request, the presence of government witnesses in New Haven for trial, which included young women for whom the trial date had been kicked numerous times and who were prepared to discuss very sensitive topics, as well as out-of-state witnesses, Judge Hall also balanced her confidence in the two experienced defense attorneys who were ready to proceed, the impaneled jurors' convenience, and ultimately did not abuse her discretion in denying the request for new counsel. Ms. Nagala, this is Judge Bianco. On this counsel issue, I understand why at that point the district court would deny such a request, but one of the things that the defense counsel mentioned in the briefs was the references by the attorney to his client talking too much and wanting him to plead guilty, hoping to plead guilty, and the suggestion is that this indicated a breakdown in trust relationships. So can you address that? Was there any evidence during the trial, other than those comments, that there was any issues regarding the working relationship between the defendant and his lawyers? No, Your Honor. Those offhand comments made during the charge conference were comments about defense counsel's assessment of the strength of the government's evidence. There was no indication that Mr. Kelsey was not cooperating with his counsel. In fact, at one point on the record, Attorney Selson said that she wanted Mr. Kelsey to be in the courtroom for the charge conference and other pretrials and during trial proceedings so that he could see his lawyers work for him. So no, Your Honor, the defense counsel would have raised that if there had been, and they felt that they were confident in proceeding. Okay, my only other question is on this issue, what Ms. Calvin has referred to as bad character evidence, that Ms. Yates was testifying, putting aside the adult prostitution issue, which, again, I understand the government's argument. Why was it necessary for Ms. Yates to testify about having panic attacks and his mind control over her and Ms. Rosa testified about throwing her keys in the backyard? I think when there was an objection raised, the AUSA just said, I'll move on. So was there any relevance to that or was your argument that it was harmless? Your Honor, there was relevance in that it showed how Mr. Kelsey conducted his prostitution operation, which was relevant to how the minors acted and their degree of control over the situation, or rather Mr. Kelsey's degree of control over them. There is also a plain error argument because most of that testimony was not objected to after admission. All right, thank you. I'll pass the question to Judge Lexley. Thank you, Judge Bianco. Ms. Agalo, I have a question with regard to restitution. How is it that the government collects money for a young lady whose pay was generated by prostitution activities, which would have been illegal? Your Honor, that has been well established in the Second Circuit for some time. I believe it's the Mamadov case that finds that even though it's illegal conduct, the statute specifically allows for restitution for these victims. Okay, okay. I doubt very much you'd seek restitution. And I understand that we have case law. It just seems extraordinarily curious to me. Have you ever sought restitution for a drug dealer whose money was stolen from him by someone else? I doubt it. No, Your Honor. In any event, it just seems so curious to me that we do that. And I understand her victimization, but it just seems very strange to me. Thank you. I don't have any other questions. This is Judge Katzman, also on the restitution point. Why isn't it – well, first, I just want to be clear about something. I understood the government to be arguing in its brief or accepting its brief on page 63 that a limited remand is appropriate to permit the district court to make factual findings concerning Kelsey's ability to pay and to modify the restitution order to set a different payment schedule. Is that still your position? Yes, Your Honor. And here, why isn't it – help me understand. Why isn't the district court's requirement that Kelsey pay restitution immediately upon the entry of judgment inconsistent with its decision to waive interest? Because it finds that the defendant, and I'm quoting, isn't capable of paying it now and not likely to be able to pay it for some period of time. Your Honor, it may well be that if the case is sent back to Judge Hall, that she may not be able to supplement the record and find facts that support the imposition of an immediate restitution order against Mr. Kelsey. But we do believe that she should be given that opportunity, and it may well end up that she ends up putting him into a payment plan rather than requiring immediate payment. So you are accepting the view that with respect to the district court's restitution order, we should remand? Yes, Your Honor. Not as to the calculation of the amount, but as to the timing of the payment, Your Honor. Understood, understood. Thank you. And we'll now hear the rebuttal. Thank you, Your Honor. I did find, regarding the Robinson, the pretrial argument on Robinson, you can find an extensive quote about that on page 55 of our brief, footnote 58. Just quickly. My question about Robinson went to what counsel below seems to concede about Robinson in the record. Like I said, in context, he had already been precluded from presenting any evidence about the fact that the woman might have looked older than 18. I would just say quickly on that that if Robinson is read to preclude that, then what is the point of that section in the statute? If you can look at a person and reasonably believe that they are over the age of consent, then why is there an opportunity to observe? So I think you have to assume that the legislature intended that a reasonable view would lead a reasonable person to presume that the person was or could be under 18. To skip around a little bit, the restitution issue, I'd like to point out that the government in its brief argues on the basis of the testimony of Sarah Beaulieu that they didn't split the payment after the first night. I disagree with that interpretation, but it also doesn't comport with what the victim herself said. On the government's appendix at page 159, the prosecutor asks Sarah Packer, the victim that we're talking about here, did you split the money 50% for you and S.B. and 50% for Tony? Answer, me and S.B. got 50% and Tony got 50%. That was the rule. Question, is that how it worked out on the days that you were, days plural, that you were working with the prosecution? Answer, yes. Okay, then my last point I need to bring up is the government argued that he waived the competency issue and the competency hearing. And the problem with that argument is that under a Supreme Court precedent, a defendant can't waive his right to adequate procedures to determine competency. And what we're talking about is whether or not the procedure was adequate to make that determination. Thank you. Thank you for your argument. All right, thank you. Thank you both for your argument. We appreciate them. The court will reserve decision.